UNITED STATES DISTRTICT COURT
SOUTHER DISTRICT OF OHIO
EASTERN DIVISION

PROGRESSIVE HEALTH AND
REHAB CORP.,

      Plaintiff,

                                                               Civil Action No. 2:17-cv-58
   v.                                               Judge Algenon L. Marbley
                                                   Magistrate Judge Chelsey M. Vascura

QUINN MEDICAL, INC.,

      Defendant.

## OPINION AND ORDER

Plaintiff, Progressive Health and Rehab Corp., filed this putative class action against Defendant, Quinn Medical, Inc., under the "junk fax" provision of the Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227 *et seq.* ("TCPA"). This matter is before the Court for consideration of Plaintiff's Motion to Compel (ECF No. 60), Defendant's Response (ECF No. 61), and Plaintiff's Reply (ECF No. 67). Through its Motion, Plaintiff seeks an order compelling Defendant to produce fax transmission logs that identify the fax numbers of each successful recipient for 26 at-issue fax broadcasts. For the reasons that follow, Plaintiffs' Motion is **GRANTED.**

### I.

According to Plaintiff's Complaint (ECF No. 1), Defendant violated the TCPA when it mass-faxed unsolicited advertisements to Plaintiff and others. In response to Plaintiff's discovery requests, Defendant produced 26 emails from the broadcaster it hired to transmit its facsimile advertisements. These 26 emails show that at Defendant's request, the broadcaster completed 26 fax broadcasts between June 2014 and November 2016. For each of these 26

broadcasts, the emails reflect how many faxes were sent and received, as well the number of pages sent.  The 26 emails do not, however, identify either the individuals/entities or the fax numbers of the individuals/entities who received Defendant's faxed advertisements.  Defendant is in possession of transmission logs for each of the 26 at-issue transmissions that reflect the fax numbers where Defendant's fax advertisement were sent and whether the transmission was successful for each number, but has objected to Plaintiff's request for production of these transmission logs on relevance grounds.  Despite conferring in good faith as required under Federal Rule of Civil Procedure 37(a)(1), the parties have been unable to resolve their dispute regarding the discoverability of the transmission logs, prompting Plaintiff to file the subject Motion to Compel.

In its Motion, Plaintiff maintains that the Court should compel production of the transmission logs because they contain information that its expert needs to complete his report.  In its Reply, Plaintiff elaborates that its expert will use the information the logs contain (such as how many advertisements were sent, to whom the advertisements were sent, and how many transmissions were successful) to answer questions regarding ascertainability, numerosity, commonality, and typicality of the putative class.  Plaintiff also submits that the information contained the transmission logs will enable it to investigate the validity of Defendant's asserted defenses.

In its Memorandum in Opposition, Defendant asserts that the information Plaintiff seeks to obtain through production of the transmission logs lacks relevance at the pre-certification stage.  According to Defendant, the information contained in the logs is not relevant to any element under Federal Rule of Civil Procedure 23.  (*See* Def.'s Mem. in Opp'n 3-5, ECF No. 61 ("[T]he actual identity of each individual putative class member is not relevant to any

requirement under Fed.R.Civ.Pro. 23.").) Defendant further submits that Plaintiff's assertion that its expert needs the information contained in the transmission logs lacks merit because the transmission logs identifying the recipients exist. Defendant explains its position as follows:

> A plaintiff in a TCPA fax class action will often use an expert to attempt to establish ascertainability when the fax lists or the lists of successful fax transmissions do not exist. That issue does not exist here because Defendant in this case has the fax lists and the lists of the successful fax transmissions for each fax . . . .
>
> Because the fax numbers exist, Plaintiff's argument that its expert needs the information to identify the class lacks support in the law. The Sixth Circuit has held that "[i]n the context of the TCPA, where fax logs have existed listing each successful recipient by fax number, our circuit has concluded that such a 'record in fact demonstrates that the fax numbers are objective data satisfying the ascertainability requirement.'" *Sandusky Wellness Center, LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 471 (6th Cir. 2017), quoting, *American Copper & Brass, Inc. v. Lake City Indus. Products, Inc.*, 757 F.3d 540, 545 (6th Cir. 2014). When the fax lists/logs do not exist, Plaintiff will attempt to create that objective data through an expert. However, when the fax lists/logs for successfully transmitted faxes exist as they do in this case, then the objective data is already present according to Sixth Circuit precedent. Therefore, an expert report on this issue is moot.

(*Id*. at 6-7.) Defendant speculates that the real reason Plaintiff's counsel seeks the information contained in the transmission logs is to identify potential new clients. Defendant requests that if the Court compels production of the transmission logs, that it permit Defendant to redact the last four digits of each fax number to address this concern. Finally, with respect to Plaintiff's contention that it requires the information in the transmission logs to investigate the validity of its defenses, Defendant offers to produce information relevant to its defenses for a randomly selected, statistically valid sample.

## II.

Determining the scope of discovery is within the Court's discretion. *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998). As the United States Court of Appeals for the Sixth

3

Circuit has recognized, "[t]he scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). Federal Rule of Civil Procedure 26(b)(1), which sets forth the permissible scope of discovery, provides as follows:

> **(1) Scope in General**. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

"[T]he proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Guinn v. Mount Carmel Health Sys.*, No. 2:09-cv-226, 2010 WL 2927254, at *5 (S.D. Ohio July 23, 2010) (Kemp, J.) (quoting *Clumm v. Manes*, No. 2:08–cv–567, 2010 WL 2161890 (S.D. Ohio May 27, 2010) (King, J.)); *see also Berryman v. Supervalu Holdings, Inc.*, No. 3:05-cv-169, 2008 WL 4934007, at *9 (S.D. Ohio Nov. 18, 2008) ("At least when the relevance of a discovery request has been challenged the burden is on the requester to show the relevance of the requested information.") (internal citation omitted)).

### III.

The Court finds that Plaintiff has satisfied its burden to demonstrate that the information contained in the transmission logs is relevant at the pre-certification stage of this TCPA class action.

In its December 4, 2017 Order, this Court chose to permit Plaintiff to conduct pre-certification discovery "aimed toward refining the class definition such that the Court may

4

determine the certification question . . . ." (ECF No. 46 at p. 9.) The Court rejected Defendant's challenge under Rule 23(a)(3) reasoning as follows:

> It is true that courts have declined to certify putative TCPA classes when the faxes plaintiff received do not share the "same essential characteristics" as faxes received by other putative class members. On the other hand, courts have certified classes when plaintiffs have shown that the defendant engaged in a "course of conduct" by faxing substantially similar faxes to—in some cases—the same list of recipients. The Court does not yet have evidence to determine whether plaintiff's claims fall into the former or the latter category—indeed, the *parties* do not yet have that evidence. That is why justice requires the Court to continue to permit controlled discovery to determine whether class certification is appropriate. Such additional discovery will reveal whether faxes received by other members of the putative class do or do not share essential characteristics with those received by Plaintiff.

(*Id*. at 11-12 (internal citations to authority omitted).)

Plaintiff represents that its expert will use the information contained in the transmission logs—such as how many advertisements were sent, to whom the advertisements were sent, and how many transmissions were successful—to answer questions the Court posed in its December 4, 2017 Order. The Court agrees that the information contained in the at-issue transmission logs could bear on the Rule 23(a) requirements of numerosity, commonality, and typicality, as well as predominance and implied ascertainability requirements in Rule 23(b)(3). As Plaintiff points out, in *American Copper & Brass, Inc. v. Lake City Industrial Products, Inc*., 757 F.3d 540 (6th Cir. 2014), the Sixth Circuit affirmed the trial court's certification of a class in an TCPA junk fax action where the plaintiffs' expert reviewed the fax logs to conclude "that a total of 10,627 successful transmissions of a complete fax were received by 10,627 unique fax numbers." *Id*. at 542-45 ("[T]he record in fact demonstrates that the fax numbers are objective data satisfying the ascertainability requirement." (citations omitted)); *see also Imhoff Investment, LLC v. Alfoccino, Inc*., 792 F.3d 627, 634 (6th Cir. 2015) (reversing trial court's grant of summary judgment for the defendant in junk fax case and remanding for further proceedings where the plaintiff's expert

5

report reflected that the defendant hired contractor to broadcast "two particular advertisements to [the named plaintiff] and 7,624 other recipients").[1] *Cf. Taylor v. Universal Auto Grp. I, Inc.*, No. 1:14-mc-50, 2015 WL 2406071, at *4-6 (S.D. Ohio, May 20, 2015) (compelling pre-certification production of the names and contact information of putative class members in TCPA action over the defendant's relevance objections); *Peters v. Credit Prot. Ass'n LP*, No. 2:13-cv-767, 2014 WL 6687146, at *5-9 (S.D. Ohio, Nov. 26, 2014) (same); *Kane v. Nat'l Action Fin. Servs., Inc.*, 2012 WL 1658643, at *6-8 (E.D. Mich. May 11, 2012) (same).

Defendant's reliance upon *Sandusky Wellness Center* to conclude that the information contained in the subject transmission logs lack relevance is misplaced. In *Sandusky*, the Sixth Circuit affirmed the trial court's denial of class certification in a junk fax TCPA case. 863 F.3d at 462. The *Sandusky* Court found no abuse of discretion in either (1) the trial court's conclusion that the absence of transmission logs, where the evidence showed that only 75% of the 53,502 numbers on the invoice records were transmitted successfully, raised predominance and ascertainability issues precluding certification; or (2) the trial court's conclusion that the predominance issues precluded certification where the defendant produced evidence showing that "several thousand" of the 40,343 fax recipients consented and that identification of the consenting recipients would require "manually cross-checking 450,000 potential consent forms." *Id*. at 465-74. Defendant correctly points out that the *Sandusky* Court stated that "[i]n the context of the TCPA, where fax logs have existed listing each successful recipient by fax number, our circuit has concluded that such a 'record in fact demonstrates that the fax numbers are objective

---

[1] The *American Copper and Imhoff Investment* cases also reveal the inaccuracy of Defendant's suggestion that Plaintiff's desire to use an expert "lacks support" in light of the existence of the transmission logs and also its related assertion that experts are only utilized to create objective data in the absence of transmission logs. (*See* Def.'s Mem. in Opp'n 6-7, ECF No. 61.)

data satisfying the ascertainability requirement.'" *Id*. at 471 (quoting *Am. Copper*, 757 F.3d at 545)). But nothing in this statement implies that the fax transmission logs are not discoverable at the pre-certification stage. To the contrary, in the *American Copper* case the *Sandusky* Court quotes, during pre-certification discovery, the defendant *produced* the fax transmission logs to the plaintiff's expert, who relied upon the logs in generating his report. *See Am. Copper*, 757 F.3d at 542-45.

Defendant's objection to production of the transmission logs based upon privacy concerns and its speculation that Plaintiff's counsel might use the information to solicit new clients fail to persuade the Court to reach a different conclusion. As Plaintiff points out, Defendant's concerns are addressed by the Court's entry of the parties' stipulated Confidentiality Agreement and Order. (*See* ECF No. 53 at ¶ 5(a) ("Documents designated confidential and any information contained therein under this Order shall not be used or disclosed by the parties or counsel for the parties or any other persons identified below (¶ 5.b.) for any purposes whatsoever other than preparing for and conducting the litigation in which the documents were disclosed . . . . Documents designated confidential and any information contained therein also shall not be used for the purpose of soliciting clients to be represented in any litigation unless that information is publicly available.").) *See also Taylor*, 2015 WL 2406071, at *4 (compelling production of documents containing identifying information about recipients during the pre-certification stage of TCPA putative class action and rejecting the defendant's objections on the grounds of relevance and that "it would be improper for [the plaintiff] to use that information to contact or solicit potential class members").

Finally, Defendant's proposed alternatives—redaction of all but four digits of the number and/or utilization of a statistical sampling—fall short. The Court acknowledges that statistical

sampling could be an efficient approach to investigate the validity of Defendant's defenses. But this does not lead the Court to conclude that production of the transmission logs is unnecessary because both statistical sampling and redaction of all but four digits would prevent Plaintiff's expert from ascertaining how many successful faxes were sent to *unique* numbers and whether Defendant faxed substantially similar faxes to the *same* list of recipients, information that could bear the Rule 23(a) and (b)(3) requirements. (*See* Dec. 4, 2017 Order, ECF at p. 11-12 ("On the other hand, courts have certified classes when plaintiffs have shown that the defendant engaged in a 'course of conduct' by faxing substantially similar faxes to—in some cases—the same list of recipients.").)

### III.

For the reasons set forth above, Plaintiff's Motion to Compel is **GRANTED**. (ECF No. 24). Accordingly, Defendant is **ORDERED** to produce the transmission logs at issue **WITHIN SEVEN DAYS**.

**IT IS SO ORDERED**.

 /s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE